## Case No. 10,322.

### In re NORTHERN IRON CO.

[14 N. B. R. 356.] [1]

Circuit Court, E. D. Michigan. July, 1876.

BANKRUPTCY — VOTE FOR ASSIGNEE — PROOF REQUIRED OF CREDITOR—VOTE BY MANAGERS OF CORPORATION.

1. As a very general rule, the register should demand the same degree of proof, before admitting a creditor to vote for assignee, as is requisite in a trial at law or a hearing in equity. Exceptional cases, if free from all suspicions, might authorize his deviation from such rule.

2. The managing officers of a corporation, when bona fide creditors, have the same rights to vote for assignee as any other claimant. Their debts, however, should be more carefully scrutinized by the register, and if, after such scrutiny, he entertains suspicion of their rectitude, they should be postponed.

3. In making such examination, he should not be called upon to decide upon doubtful proofs; and if the claim is not susceptible of ready and demonstrable explanation, a case of suspicion under the statute should be deemed to exist.

The register certified to the district court, that the first meeting of creditors for the

---

[1] [Reprinted by permission.]

choice of an assignee was commenced December 10, 1875, and concluded January 5, 1876; on which last day there were present twenty-seven creditors, the aggregate of whose claims amounted to sixteen thousand three hundred and seventy-seven dollars and one cent. Five creditors, whose claims amounted to seven hundred and twenty dollars and twenty-six cents, were absent. All the creditors present voted for Francis B. Spear, of Marquette, for assignee. On the second day of the meeting, and before the election of the assignee, the following claims were offered to be proved: First. The claim of William B. Hatch, for the sum of ten thousand dollars, upon a promissory note payable to the order of Charles T. Harvey, and appearing, by the proofs offered, to have been transferred by said Harvey to the claimant since these proceedings in bankruptcy were commenced. Second. The claim of Samuel M. Pettengill, for the sum of ten thousand dollars, upon a promissory note to the order of Charles T. Harvey, and also transferred by Harvey to claimant since these proceedings were commenced. Third. The claim of John Glass & Sons, alleged to be on a promissory note for five hundred and thirty-seven dollars and ninety-four cents, which note is not produced, nor any copy of it; the claimants averring, as a reason for not producing either the note or a copy of it, that it is in the hands of their attorneys at Marquette. Fourth. The claim of Redington & Adams, for two hundred and twenty dollars, the consideration of which is set forth in the deposition as for "merchandise sold and delivered" by claimant to said bankrupts; the deposition referring to a schedule annexed, which states the indebtedness to be, "Paid R. White, for twenty thousand brick, two hundred dollars, and paid for loading brick on to vessel, twenty dollars." The allowance of these claims was postponed by the register, under section 5083, until the election of an assignee; the first two on the ground that the claimants derived their interest from Charles T. Harvey, who was the original creditor, and so continued until after the commencement of the proceedings in this case; and who, at the time the debt was created, and so continuing up to the bankruptcy of the corporation, was its president and principal managing officer. The claim of John Glass & Sons was postponed until the note on which the claim was founded, or a sworn copy of it, should be produced. The ground on which the claim of Redington & Adams was postponed was the variance between the consideration, as stated in the deposition, and in the exhibit.

By HOVEY K. CLARKE, Register. The grounds upon which the claims of Hatch and Pettengill were postponed are the same as those submitted by me to the court in the case of the Lake Superior Ship Canal, Railroad & Iron Co. [Case No. 7,997]. I am unable to see anything in this case which would justify a different conclusion. The case of John Glass & Sons depends upon the propriety of requiring a party claiming under a promissory note to produce it or a sworn copy of it. In no other court would a party be excused from producing the original except upon proof of its loss. A relaxation of this rule, so as to allow proofs upon sworn copies, is, I think, as far as can be permitted, and retain on the files of the case at least some semblance of evidence to prevent duplicate proofs, an evil which practice shows to be sufficiently common to require caution in this part of a register's duty. As to the proof of the claim of Redington & Adams, I am satisfied, on reflection, that it should have been allowed. The variance illustrated a habit of careless swearing, which, unfortunately, is too common in proving debts in bankruptcy, and, though it may have deserved rebuke, I think, now, nothing more. All which, together with the proofs of debt offered, and the request made on behalf of the claimants, are herewith certified.

Alfred Russell, for creditors.

Moore, Canfield & Warner, contra.

BROWN, District Judge. By section 5083 of the Revised Statutes, when a claim is presented for proof before the election of the assignee, and the judge or register entertains doubts of its validity, or the right of the creditor to prove it, and is of opinion that such validity or right ought to be investigated by the assignee, he may postpone the proof of the claim until the assignee is chosen. In the case of the Lake Superior Ship Canal, Railroad & Iron Co. [Case No. 7,-997], it was held by this court that the managing officer of a corporation, who was responsible for the conduct of its business prior to its bankruptcy, ought not to be admitted as a creditor before the appointment of an assignee. I fully concur in this opinion, and it seems to me this case falls within the rule there announced. The notes were given to the president for moneys paid and advanced by him to the corporation, and were not transferred to the holders until after the commencement of proceedings in bankruptcy. Advances of this kind are very frequently made by the officers of a corporation, and the effect of allowing proofs of these debts, before the appointment of an assignee, would frequently result in the choice of a person devoted to the interest of the directors, who would thus become indirectly reinstated in the control of its affairs. In addition to this, it is no infrequent thing for officers and directors of corporations to obtain the allowance of claims in their own favor, which, upon a thorough sifting, are found to be collusive and fraudulent, as against the other creditors of the association. I deem the argument of the register in the Ship Canal Case, upon this point, unanswerable. When the proof of debt is entirely

free of any suspicion it is his duty to receive it. Where there is any doubt, I should not willingly interfere with his discretion in postponing it.

The only hesitation I have, with regard to the deposition of Glass & Sons, is, whether the register has the right to receive a copy or proof of contents of a note in any case without evidence of the loss or inaccessibility of the original. The rule at law is well-settled, and while I approve of a relaxation of that rule in depositions of proofs of debt, I am clearly of the opinion that the note should be produced before the dividend is paid, that the amount may be indorsed upon it. The door being thus thrown open by the admission of secondary evidence, I am not disposed to disturb the practice of the register in requiring the production of a copy, notwithstanding the general rule of law that there are no degrees of secondary evidence. The practice of receiving copies conduces so much to the convenience of parties who may desire to retain the notes, for the purpose of suing other parties to them, that I cannot but approve such a departure from the stringent rules of common law; but I perceive nothing unreasonable in the practice of the register in requiring a copy in lieu of parol evidence of contents. The certificate and opinion of register are therefore approved.

The decision of the district judge was carried by petition for review into the circuit court.

EMMONS, Circuit Judge. In reference to the exclusion of the claim of Redington & Adams, it is conceded by the learned register there was error. We agree with the district court that where it demonstratively appears that the result could not have been changed by a different ruling, proceedings will not be reversed for such cause. This is in harmony with practice upon writs of error and all other appellate proceedings where errors are affirmatively shown to be immaterial. As a very general rule we think the register should insist upon the same degree and character of proof as that demanded in a trial at law or hearing in equity. We do not mean to say that exceptional cases may not arise when a register would be justified in accepting a less degree of proof for the purpose of allowing the creditor to vote for the assignee. If it should appear that some accident prevented the presentation of a paper, and circumstances freed the case from all suspicion, we should approbate the reception of proof of its contents for this single purpose, leaving the creditor to more full evidence when the assignee was appointed. Here we do not think satisfactory reasons were shown why the absent draft was not produced. We quite agree with the opinion of the register in this regard, and approve the postponement of the proof of Messrs. Glass & Sons' claims. Did the postponement of the claims of Hatch and Pettengill rest upon the reasons which learned counsel have imputed to the district court and the register, and did the record render such reasons necessary, we should promptly reverse the rulings.

It is by no means requisite they should hold, nor do we suppose they did hold, that the mere fact that a claim accrued to a managing officer of a corporation necessarily throws any considerable suspicion upon it. The financial history of the country shows that they who suffer most by the failure of corporations, in a very large majority of instances, are its leading shareholders and officers. So nearly universal is this that the failure of institutions with which citizens are connected almost invariably affects their personal credit. Business men presume that they are involved in its affairs, and pause for much explanation and exert careful scrutiny before they conclude they are not its creditors and losers by the catastrophe. It is the duty of tribunals to take judicial notice of a condition so common. It would be most unwarrantable to erect a rigid and certainly novel rule of law which would in all instances exclude the managing officers of a corporation, who are its creditors, from participating in the choice of assignee. It would violate the express provisions of the statute, and be quite at war with its spirit and intention. The judicial being is as distinct, in legal contemplation, from its shareholders and officers as two natural persons from each other. The authors of the bankrupt law [of 1867 (14 Stat. 517)] understood this familiar truism, and the letter of the law must be read in reference to it. If the officer is a creditor, he has just as much right as any other creditor. To disfranchise him, and assert that in no case shall he participate in the choice of assignee, would constitute an unjustifiable violation of the statute. We do not understand that any such irrational rule has been asserted by either the register or the district court. In the Case of the Ship Canal Company [supra] the claims were so suspicious as to have called for their postponement had they been those of third persons. In the record before us now very large claims, in proportion to the whole assets, were presented in behalf of the president and managing officer. When explanation is required by the register, as it was his right, and we think his duty, in all such instances to ask, the response is a general curt affidavit, no better than a common-law declaration, for "money laid out and expended," unaccompanied even by a bill of particulars. Beyond doubt the register rightfully postponed the claims. Had the books of the company been presented, and all then had appeared fair in the ordinary course of business, if the debt had had a natural commercial growth, such as is usual in similar circumstances, the claim would not have been postponed. There is no right to post-

pone any claims unless the register has suspicion they are unfounded. Such suspicion cannot be entertained judicially in the court below or recognized here unless predicated upon facts which legitimately excite it. If they exist with prima facie force, beyond question the creditor must be accorded the opportunity of removing them. In prescribing the limits of this investigation, the largest discretion must be accorded to the register. He should not be called upon for long postponement, which would delay the appointment of an assignee. He should not be called upon to unravel complicated and suspicious transactions, and decide ultimately the question of right. A suspicion within the statute arises when the claim is not susceptible of a ready and simple explanation. Such explanation would be given by a managing director who presents the books of the corporation, and shows that, in the ordinary course of its business, he has made advances and incurred liabilities such as would naturally spring from his position and means. Whether he is a large shareholder as well, and every circumstance which goes to show bona fides should be looked to. If all these are laid before the register, and then a mistake in legal conclusion is made, it would be subject to review by the district and circuit courts, like any other ruling. From the very able decisions of the register, whose judgment is appealed from in this case, we do not understand that he would in every instance postpone the claim of a managing officer, simply because he is such, if he offers to explain and show its rectitude. It may frequently happen that the intelligence and interests of these officers would be eminently useful in the selection of a trustee. The modern practice is quite common in equity of appointing corporate officers receivers, on account of their knowledge of affairs. Although this principle should not be carried so far as in any instance to make defaulting officers and wrong-doers—they who are really the substantial bankrupts—instruments of winding up, still, in many instances, great injury may be done by excluding officers from the power of voting, or even acting as assignee.